Filed 9/22/15  P. v. Torres CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B258496 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA127288) |
| v. | |
| ISMAEL TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas I. McKnew, Jr., Judge.  Affirmed.

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephen D. Matthews and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Ismael Torres of three counts of engaging in sexual intercourse with a ten-year-old child. Torres's sole contention on appeal is that the trial court erred in admitting statements the victim made during the investigation that were inconsistent with her testimony at trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Investigation*

In 2012, Torres lived in an apartment with his girlfriend J., their three children, and J.'s then ten-year-old daughter from a previous relationship, Dana. On October 27, 2012, Dana told J. that Torres had forced her to have sex with him two weeks earlier while J. was out of the apartment. J. immediately reported the incident to the South Gate Police Department.

The night J. called the police, Dana was interviewed by South Gate Police Officer Jason Camacho. Dana told Camacho that Torres would "touch" her every time J. left her alone with him. She described an incident that occurred about two weeks earlier in the family's apartment. After J. left the apartment, Torres told Dana's siblings to leave the living room and not come out until he told them to. He then grabbed Dana, laid her on her back, removed her pants, and got on top of her. Dana tried to close her legs and pull herself away from Torres, but he pinned her down and forced her legs open with his own. Dana told Torres to stop, saying " 'it's mine and not yours,' " referring to her vagina. He then told Dana to be quiet and placed his penis inside her vagina. Dana said that Torres kept his penis inside her for about seven seconds. After he stopped, Torres gave Dana five dollars.

While describing that incident, Dana told Camacho that it no longer hurt when Torres put his penis inside her, and that now it only felt nasty. Camacho then asked Dana if Torres had forced her to have sex with him before. She said that since she was six or seven years old, Torres had forced her to have sex with him about six or seven times a year. In recalling those incidents, Dana said that Torres would do the same things to her that he did during the first incident she described.

2

Immediately after speaking to Camacho, Dana was taken to the hospital where she underwent a sexual assault examination. Nurse Practitioner Nune Abraamyan interviewed Dana before the examination. Dana told Abraamyan much of the same details about Torres's assaults that she told Camacho. She said that Torres started forcing her to have sex with him when she was around seven years old. Dana also said that she did not say anything earlier about the assaults because Torres had told her not to tell anyone, and she was afraid that she would get in trouble if she did.

Dana's physical examination revealed no evidence of a sexual assault. Although she had no bruises or other marks on her body, Abraamyan stated the lack of such marks did not confirm that Torres did not assault Dana since more than two weeks had passed since the last alleged incident. Although Dana's hymen showed no signs of having been previously injured, Abraamyan opined that a penis can penetrate the outer portion of a vagina without injuring the hymen, and even a slight penetration can create pain or discomfort for a young child like Dana.

On October 28, 2012, J. was interviewed by Detective Edgar Gomez. J. told Gomez that she believed Torres had sexually assaulted Dana. She also said that when she confronted Torres the day before, he denied having sex with Dana, pushed her to the ground, and ran out of their apartment.

On November 1, 2012, Dana was interviewed by Susana Flores, a forensic interviewer with the Children's Advocacy Center. Dana recounted the incident that occurred approximately two weeks earlier. She also told Flores that Torres had started assaulting her when she was around seven years old, and she described two other incidents when Torres forced her to have sex with him: once while she was in the third grade and once on a date she could not recall. Dana said that during each incident Torres would undress her, touch her vagina with his penis, and move up and down for several seconds.

Also on November 1, 2012, Torres was interviewed by Gomez. Torres admitted to "experiment[ing]" sexually with Dana because he was lonely. He said that about two weeks earlier, he and Dana were using the computer when they started "playing

3

around." While Dana was sitting on his lap, she took off her own shorts and grabbed Torres's penis. He then took off his shorts and put his penis inside Dana's vagina. He removed it after only a few seconds because he became scared. Although Torres said that he had sex with Dana on only one occasion, when Gomez asked him how that incident occurred, Torres responded, "which one are you--?" When Gomez asked Torres if he had been forced into admitting anything during the interview, Torres responded, "[n]o, you just helped me."

On April 30, 2013, Dana met with Camacho and a prosecutor to discuss her allegations against Torres. During that meeting, Dana said she lied when she previously claimed that Torres sexually abused her.

2. *The Charges, Trial, and Sentencing*

In an information filed on May 14, 2013, Torres was charged with three counts of engaging in sexual intercourse with a child 10 years of age or younger (Pen. Code, § 288.7). Dana was named as the victim in all three counts. After numerous continuances, the trial began on June 11, 2014.

During the June 2014 trial, Dana testified that she lied about the allegations that Torres sexually assaulted her. Dana explained that the day before J. called the police, she overheard Torres tell another woman he loved her while he was on the telephone. Dana told J. about the conversation, and J. told her to make up a story about Torres sexually assaulting her so that they could report him to the police. When asked about the statements she made to Camacho, Abraamyan, and Flores, Dana testified that she either lied when making those statements or could not remember making them.

J. also testified at trial. She denied noticing anything unusual about the way Torres treated Dana before she called the police. She confirmed she called the police because Dana told her that Torres had inappropriately touched her, but she denied reporting to the police that Torres had forced Dana to have sex with him. She also acknowledged speaking to Gomez shortly after she called the police, but she denied telling him that Torres had pushed her when she confronted him about Dana's allegations. When asked why she told investigators that Dana would frequently

4

complain about pain in her groin, J. responded that Dana participated in an after-school cheerleading program, and that the stretches and exercises Dana was required to perform often made her groin sore. She claimed that Gomez forced her to make incriminating statements about Torres so that Gomez could make an arrest. J. testified that she married Torres about a year before trial began, after she reported him to the police.

The prosecution called Gomez, Camacho, Abraamyan, and Flores to testify about the statements Dana and J. made during South Gate's investigation.[1] The court overruled Torres's hearsay objections to each witness's testimony about Dana's and J.'s out-of-court statements.

Torres testified on his own behalf. He denied sexually abusing Dana and claimed that she made up the allegations after she caught him cheating on J. According to Torres, in October 2012, he was having an affair with a woman named Sandra. Dana caught him telling Sandra he loved her over the telephone the day before J. called the police.

When questioned about his interview with Gomez, Torres claimed that he falsely admitted to having sex with Dana because he felt so guilty about cheating on J. that he was willing to say anything Gomez wanted to hear. He also claimed that he "spac[ed] out" during the interview and was confused by most of Gomez's questions.

The jury convicted Torres of all three counts of engaging in sexual intercourse with a child 10 years of age or younger. The trial court sentenced him to 50 years to life in state prison, consisting of two consecutive 25-years-to-life terms for counts one and two, and a concurrent 25-years-to-life term for count three. Torres timely appealed.

### DISCUSSION

The only issue Torres raises in this appeal is that the trial court erred in admitting the out-of-court statements Dana made during the investigation. He argues the court should have excluded those statements because they were irrelevant in light of Dana's

---

[1]     Each witness's testimony is summarized above in the section describing South Gate's investigation.

testimony that she had lied about Torres sexually assaulting her. Alternatively, Torres argues that even if the statements were relevant to the issue of guilt, they were unduly cumulative under Evidence Code section 352.

We review a trial court's ruling on the admission of evidence for abuse of discretion. (*People v. Cowan* (2010) 50 Cal.4th 401, 462 (*Cowan*).) Under Evidence Code section 1235, prior inconsistent statements are admissible to establish the truth of the matter asserted as well as to impeach the declarant. (*Cowan*, *supra*, 50 Cal.4th at p. 462.) That statute allows a party to introduce a witness's out-of-court statement if that statement is inconsistent with the witness's testimony at trial and the requirements of Evidence Code section 770 have been met. (Evid. Code, § 1235.) Evidence Code section 770 provides: "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action."

The trial court properly admitted Dana's out-of-court statements because they clearly fall within the scope of Evidence Code section 1235. Dana's statements to Camacho, Abraamyan, and Flores were inconsistent with her testimony at trial. Throughout South Gate's investigation, Dana provided Camacho, Abraamyan, and Flores largely identical accounts of Torres's assaults. At trial, Dana either claimed that she could not remember telling Camacho, Abraamyan, and Flores that Torres had sexually assaulted her, or she testified that she had lied to those individuals about Torres's conduct, claiming that Torres never sexually assaulted her. (See *People v. Brown* (1995) 35 Cal.App.4th 1585, 1597 (*Brown*) [witness's testimony that she had lied about the defendant assaulting her was "clearly" inconsistent with her statements during the investigation that the defendant had assaulted her].)

While a witness's testimony that she cannot remember making an out-of-court statement is not an inconsistency in the strictest sense, it is "inconsistent" with the out-of-court statement for purposes of Evidence Code section 1235 if there is evidence

6

that the witness is being deliberately evasive in failing to recall the prior statement. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 416; *People v. Hovarter* (2008) 44 Cal.4th 983, 1008-1009 [inconsistency in effect, rather than express contradiction, is the test under Evidence Code section 1235].)  Here, there was sufficient evidence for the court to conclude Dana deliberately feigned a lack of memory about the statements she made during Torres's 2012 investigation.  By the time of trial in 2014, J. appeared to have reconciled her relationship with Torres, as she testified that she and Torres got married in 2013, which could have given Dana and J. reason to refuse to testify against Torres.

Torres argues Dana's out-of-court statements were inadmissible regardless of Evidence Code section 1235's application because they should have been excluded under Evidence Code section 352.  Specifically, he asserts once Dana admitted making the statements, but claimed that they were lies, the court was required to accept her trial testimony as true and exclude her out-of-court statements as false and irrelevant.  Torres also asserts that once Dana admitted making the out-of-court statements, the fact of those statements having been made was established, and the extrinsic evidence of Dana making the statements introduced through Camacho, Abraamyan, and Flores was unduly cumulative.

"To preserve a claim that a trial court abused its discretion in not excluding evidence under Evidence Code section 352, 'a party must make a timely and specific objection when the evidence is offered.'  [Citation.]"  (*People v. Harrison* (2005) 35 Cal.4th 208, 230.)  Here, Torres did not object under Evidence Code section 352 to the prosecution's introduction of Dana's statements.  Accordingly, he forfeited this argument on appeal.

In any event, Torres's argument fails on the merits.  Indeed, a nearly identical argument was rejected by the Fourth District Court of Appeal in *Brown*.  There, the defendant argued the trial court should have excluded evidence of the victim's prior statements to police, friends, family members, and doctors that the defendant had physically assaulted her after she testified that she had made the statements, but asserted

7

that they were false. (*Brown*, *supra*, 35 Cal.App.4th at pp. 1595-1597.) The Fourth District held the extrinsic evidence of the victim's statements was properly admitted because the issue of guilt turned primarily on whether the victim's out-of-court statements were true. (*Id*. at p. 1597.) The court reasoned the jury would not have been able to evaluate and weigh the probative value of the statements by hearing only the victim's testimony about the statements. (*Ibid*.)

For the same reason, the trial court here properly admitted evidence of Dana's out-of-court statements. Whether Torres was guilty of sexually assaulting Dana turned almost entirely on whether the jury believed Dana's trial testimony or her out-of-court statements during the investigation. Without Camacho, Abraamyan, and Flores testifying about the details of Dana's pretrial statements, and the contexts in which they were made, the jury would not have been adequately equipped to compare her testimony and out-of-court statements and determine which were true. (See *Brown*, *supra*, 35 Cal.App.4th at p. 1597 [the context and manner in which the out-of-court statements were made is a relevant factor to jury's credibility determination].) Put another way, Dana's out-of-court statements were directly relevant to two critical issues at trial: whether Torres committed the charged crimes and Dana's credibility.

## *DISPOSITION*

The judgment is affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ALDRICH, J.